The Philadelphia and Reading Railroad Co. *versus* The Lehigh Coal and Navigation Co. *et al.*

The Lehigh Coal and Navigation Co. *et al. versus* The Philadelphia and Reading Railroad Co.

A power, contained in a deed of trust, to sell the trust property, "either for a price or consideration to be paid *out and out* in money, or upon the reservation of a ground-rent," extinguishable or otherwise, is not well executed by a sale on credit, the purchase-money to be secured by mortgage upon the premises.

The parties having contracted for a sale on credit, the purchase-money to be secured by a mortgage, payable by instalments, a court of equity will not decree a conveyance reserving a ground-rent, extinguishable at the times and in the proportions specified for the payment of the instalments contracted to be secured by mortgage. Nor will the payment of the whole of the purchase-money in cash be decreed.

Equity regards compensation in cases of defective execution, if the contract can be substantially executed, as equivalent to performance; but will not enforce a different contract from that entered into by the parties.

In case of the death of one of several trustees, a power of sale, under the Act of 3d May 1855, is well executed by the survivors.

*It seems*, that where real estate is conveyed to several trustees, they take as joint tenants, and on the death of one of them, the estate survives to the others at common law; such cases being excepted from the operation of the Act of 31st March 1812.

APPEALS IN EQUITY from the Court of *Nisi Prius*.

These were cross-bills in equity, the first filed by The Philadelphia and Reading Railroad Company against The Lehigh Coal and Navigation Company, and Caleb Cope and James Cox, the surviving trustees in a mortgage executed by the defendant corporation, to enforce the specific performance of a contract for the sale of certain wharf property in the city of Philadelphia, reserving a ground-rent of $6000 *per annum*, instead of the sum of $100,000 being secured by mortgage payable on instalments, as agreed upon; and the other by the original defendants against the complainants, praying that the contract might be enforced as made, or otherwise that the consideration might be decreed to be paid in cash.

On the 7th March 1842, The Lehigh Coal and Navigation Company, under the powers conferred upon them by the Act of 16th February 1842, executed a mortgage upon all their property, to Josiah White, Caleb Cope, and James Cox, for the purpose of securing the claims of their loanholders; in which was contained the following power of sale:—

"Provided, nevertheless, and this indenture is made upon the

express *trust*, that if the said board of managers of the said The Lehigh Coal and Navigation Company, shall, at any time or times, require the said grantees to sell and convey in fee simple or otherwise, and either for a price or consideration to be paid out and out in money, or upon the reservation of a rent, payable yearly or otherwise, for ever extinguishable, or otherwise, on the payment of a sum of money, which price or rent and its conditions shall be expressed by the said board of managers, in their requisition, any part or parts of the premises. hereby mortgaged, excepting the coal lands, navigation canals, railroad, and franchises hereby granted, then and in such case and cases, it shall be the duty of the said grantees, by themselves or their attorney duly constituted, to execute and deliver such conveyance or conveyances as shall carry such requisition into full effect, free and clear of the lien and encumbrance of this indenture, and of all trust therein; such rents, if any, to be reserved payable to the said grantees, their heirs and assigns, in trust, for the purposes of this indenture, and subject to the powers and conditions therein contained; and such price or consideration out and out to be payable to the said 'The Lehigh Coal and Navigation Company,' to be applied to the purposes of this indenture, but the purchaser or purchasers not to be accountable for the application thereof.

"And it is hereby further expressly agreed by and between the parties to these presents, that in case any one or more of the said parties of the second part, or of the trusteesf or the time being in this indenture, shall die, or become incompetent, or be desirous of resigning, or of being discharged, or neglect or refuse to perform the duties thereof, the said 'The Lehigh Coal and Navigation Company,' by their board of managers duly chosen, shall, in every and all such case and cases, be authorized from time to time to appoint another person or persons, as the case may be, in the place of such dying, resigning, incompetent, or defaulting trustee; and that thereupon such deeds and assurances shall be made, as will legally vest the mortgaged premises in the new and remaining trustee or trustees, if any, upon all the trusts and with all the powers, and under and subject to all the provisoes, conditions, agreements, stipulations, and clauses herein contained."

Josiah White died, leaving the other trustees surviving; but no other person was appointed to fill the vacancy under the provisions contained in the deed of trust.

On the 6th April 1859, The Lehigh Coal and Navigation Company contracted to sell their wharf property on the river Delaware, at Willow street, to The Philadelphia and Reading Railroad Company, for the sum of $100,000, to be secured by mortgage on the premises, and payable as follows, $12,500 in one year, $12,500 in two years, and $75,000 in ten years; the vendors undertaking

to pay off and discharge the balance of their mortgage loan, then amounting to $6000.

The original bill was filed by the Philadelphia and Reading Railroad Company, setting forth the inability of the Lehigh Coal and Navigation Company to make a title to the property on the terms agreed upon, and praying that the defendants might be decreed to execute the contract, by a conveyance reserving a ground-rent of $6000 *per annum*, with a covenant for the extinguishment thereof by the payment of $12,500 in one year, $12,500 in two years, and $75,000 in ten years; and for further relief.

The defendants, by their cross-bill, prayed for the specific performance of the original contract, by the execution to them of the bonds and mortgage of The Philadelphia and Reading Railroad Company, as agreed upon; or, in the alternative, that they might be decreed to pay the sum of $100,000 in cash, with interest from the date of purchase.

The causes came on for hearing together, on bill and answer, and both bills were dismissed with costs, whereupon these appeals were taken.

*Meredith* and *St. G. T. Campbell*, for The Philadelphia and Reading Railroad Company.—I. Can the defendants in the original bill convey to the complainants therein, the premises in question, clear of the lien of the mortgage dated March 7th 1842, receiving for the purchase-money bonds and mortgages? The mortgagees are required to convey the land mortgaged, upon a proper requisition of the company, for an equivalent in one of two things *only* : (1.) money; or (2.) *ground-rents*.

As to the *money*, the question is, does it mean money to be paid *down at the time*, or a security by bond and mortgage for the payment of money at some *future time?* That it means money paid down, and at the time, is clear, for these reasons:—1. They may *sell;* which, means a *money* consideration. 2. The *price* is to be *paid*, that is the *money* is to be *paid*, a *mortgage* is *not* to be *paid*. 3. The price is to be "*paid out and out.*" That is the *whole* price; the *entire* price is to be *paid;* if a part of the price were paid, and the remainder were secured *to be* paid, how could it be said that the price, viz. the *whole* price was *paid?* The difference is just between a thing *done*, and a thing agreed *to be* done. The word paid would thus of itself have been sufficient; but to make the matter sure, its meaning is intensified by the additional words "*out and out:*" *Nare's Glossary; Halliwell's Dict. Archaic Provincialisms; Bartlett's Americanisms; Worcester's Dict.* The price shall be "out and out *in money.*" The payment is to be in money only, and it is to be made when the sale is made, and consequently the receipt of a security then, and the payment of the money thereafter, would not be a compliance

[Philadelphia and Reading Railroad Co. *v.* Lehigh Navigation Co. *et al.*]

with the plain words, or their true intent and meaning. 4. It is not only to be "paid out and out," but "out and out in *money*." 5. Suppose it were conveyed upon the reservation of a rent, that rent may be extinguished "on the payment of a sum of *money*," but would the mortgagors have the right to substitute for that ground-rent a mortgage, that is to pay by a mortgage, *and not* in *money?* Surely not, and yet those words are not so strong as the prior words respecting the land itself. 6. If the land be conveyed under a rent, that rent shall be reserved, payable to the grantees, their *heirs and assigns*, but if sold for money, then "such price or consideration *out and out*, to be payable to the Lehigh Coal and Navigation Company, to be applied to the purposes of this indenture, but the purchaser or purchasers not to be accountable for the application thereof." This marks the difference between a security for the payment of the price which shall be given to and held till actual payment by the mortgagees, *their heirs and assigns*, and a price in money which shall not be received by the mortgagees, but by the company itself; but to whom would the proposed mortgage be given? The annual rent, equal to the interest on the principal, is to be paid to the trustees, and why should not the interest on the principal of the mortgage be likewise payable to them? They ought, therefore, to receive and hold the mortgage itself, and therefore it cannot be considered as "a price or consideration to be paid out and out in money," because that is to be paid, not to the trustees, but to the Lehigh Company itself.

II. If not, can they do so, if the purchase-money is secured by ground-rent payable as agreed, and should such a performance of the contract be decreed? If the defendants cannot receive mortgages in payment, and it is clear that they may receive a ground-rent, may they be compelled to do so?

It is well settled, that where the vendor has not substantially the whole interest he has contracted to sell, he cannot enforce the contract against the purchaser, and yet the latter can insist on having all that the vendor can convey, with a compensation for the difference: *Fry on Contracts* 100; Lord Bolingbroke's Case, 1 *Sch. & Lef.* 19 (n.); 2 *Story's Eq.*, § 779.

Now, in this case, it cannot make any substantial difference to the defendants, whether for the principal of the purchase-money, they receive a reconveyance of the land sold in the form of one or more mortgages, or in that of a ground-rent equally well secured. And as they have the express power to take the rent, but none to receive the mortgage, they should do what by the very terms of their trusts they are authorized to do. They will thus give exactly what they contracted to give; and receive what is equivalent to that which they had agreed to take. Even where the thing to be conveyed is not exactly as agreed, the court will decree per-

[Philadelphia and Reading Railroad Co. *v.* Lehigh Navigation Co. *et al.*]

formance: thus, "compensation will be given in cases where the tenures though not as stated is *nearly the same,* as where lands sold as freeholds were copyholds, of which the tenure under a composition with the lord was scarcely different from freeholds:" Price *v.* McAuley, 2 *DeGex, M. & G.* 33; *Fry on Contracts* 100.

III. Can the deeds required to vest the title in the complainants, free of the lien of the mortgage, be executed by the *surviving* trustees? It is submitted, that the two surviving trustees cannot make a good conveyance, but that the company should appoint another trustee in the place of the one deceased.

*G. M. Wharton,* for The Lehigh Coal and Navigation Company. —I. The power of the trustees, by the deed of trust, in the matter of sale, is two-fold—either to sell for a price, or consideration in money, to be paid out and out, or to sell upon the reservation of a rent, extinguishable or otherwise. The distinction is between a sale on ground-rent (which involves a reservation) and a sale for money (which involves no reservation). In the first case, the rent is reserved to the trustees, to be held upon the trusts of the deed; in the other, the price is payable to the company, to be disbursed as provided by the Act of Assembly, and the deed. There is no distinction drawn, nor is any intended, between a sale on credit and a sale for cash. A sale on ground-rent is not a sale on credit; but it is a sale with the reservation of a rent. A sale for money, is a sale for a price out and out in money, whether the money be payable at the execution of the deed or afterwards. When the price is paid, it is paid out and out in money. Whereas a rent is but the reservation of an annual sum, equivalent to the interest upon the price, and the principal is never demandable. The argument on the other side would prevent any sales for money, unless the whole price were paid down in cash—no credit for any part of it being given or allowed. This can scarcely be the meaning of the deed. It certainly was not the intention of the parties to the trust.

Out and out means completely, utterly, absolutely, without reservation. A man who speaks "out and out" upon a subject, speaks without reserve. "Out *and* out," is a mere redundancy of expression; the word *out* is duplicated in order to impart force to the phrase, as we often repeat a word in writing or conversation with the same purpose. Payable "out and out" in money, means that no part of the consideration is to be other than money; no part of it is to be anything else; as a rent, &c.; but that, when paid, the *time* of payment being agreed upon between the parties, it shall be in money, and in nothing but money. By the terms of the contract between these companies, such was to be the case. The whole consideration was to be in money. Time appears to be no element in the proper sense of the phrase "out and out."

[Philadelphia and Reading Railroad Co. v. Lehigh Navigation Co. *et al.*]

Money is paid " out and out," whether paid to-day or to-morrow, or a year hence.

II. The Reading Company seeks to impose a new contract on the Lehigh Company, which was never made by either. Something of the doctrine of *cy pres* is sought to be introduced. That doctrine applies only to charities: 2 *Story's Eq. Jur.*, § 1169; and was never adopted in Pennsylvania; *Brightly's Equity* § 404 and cases cited.

A contract for a part of a thing, is a different contract from that for the whole of it. Courts of equity have, however, gone so far as to decree a performance specifically of a part of a contract, when by so doing the whole is substantially performed, and compensation can be made for what cannot be in terms performed. But they have never gone so far as to substitute one entire contract for another. The compensation is decreed for some *deficiency* in the title, quantity, quality, description, or other matters touching the estate contracted to be sold. A vendor will not be permitted to take advantage of his own wrong, default, or misdescription. This is the extent of the doctrine, and it comes very short of what is asked here by the other side: 2 *Story's Eq. Jur.*, §§ 779, 780; *Fry on the Specific Performance of Contracts* 100.

III. As to the power to convey by Messrs. Cope and Cox, who survived Josiah White, it seems sufficient to remark, that the Act of 31st March 1812 (*Brightly's Purd.* 458), which abolished joint tenancy, having excepted trust estates from its operation, would appear to be, of itself, sufficient to justify the execution of a power or trust by a surviving trustee. The deed conveyed in terms a joint tenancy, which is not affected by the Act of 1812, and to which, therefore, survivorship was an incident. The Act of May 3d 1855, is but in affirmation of a previously well-settled principle: *Pamph. L.* 1855, p. 415.

The opinion of the court was delivered by

THOMPSON, J.—The bills in these cases were cross-bills in equity upon the same transaction, and may be considered together; as the determination in one case will mainly determine both.

The Philadelphia and Reading Railroad Co., the vendees of the Lehigh Coal and Navigation Co., sets forth a contract of the 6th April 1859, with the latter, for the purchase of the Willow street property in the City of Philadelphia and its terms; but aver the inability of that company to make a title clear of the encumbrance of the trust mortgage of 7th March 1842, on the ground that it was a sale not within the terms upon which the trustees under the mortgage were authorized to sell, and ask a decree to compel a conveyance on a certain specified extinguishable ground-rent. The defendants claim that a conveyance under the terms of the contract is within the powers of the trustees; but if not, that they

[Philadelphia and Reading Railroad Co. *v.* Lehigh Navigation Co. *et al.*]

cannot be compelled to execute a contract for a sale on ground-rent, which they never made.

The main question is upon the power of the trustees under the trust-mortgage. It will be seen, that it is twofold; either to sell for a price or consideration in money to "be paid out and out," or upon ground-rent, extinguishable or otherwise, as might be agreed upon.

The agreement entered into was for a sale on credit, payable in money, in instalments at one, two, and ten years, and to be secured by bonds and mortgage. This was clearly not a sale on a reservation of ground-rent. Was it a sale for a "price or consideration to be paid out and out in money?"

Lexicographers define this expression as meaning, "completely," "entirely," "without reservation." Consequently, when applied to an act to be performed "out and out," it must mean, ended and completed. The meaning of idiomatic expressions, is not, as is the case in defining words, to be found in origin or root; but ascertainable only from the usual and ordinary sense in which they are used—the common acceptance of them. Even unaided by the context, I would understand the words here to mean a sale for cash—not on credit; a completion of the transaction by the execution of a conveyance and payment of the consideration at the same time—ending and closing the matter by one process. This would undoubtedly be the meaning of a "cash sale," or a "sale for cash." No one ever supposed these terms thus standing, meant a sale on time. The universal understanding, it is believed, is the contrary of this, and that the words "cash sale" exclude the idea of credit or time to be given for payment. The words here to be "paid out and out" in money, were but a definition attempted of a cash sale, as is evident, when we consider the alternative sales provided for. One of them was to be sold on ground-rent, extinguishable or otherwise as might be agreed upon. In one sense, this was a sale for money; and according to the argument of the defendants, if eventually extinguished by money, would be a sale "out and out in money." By this meaning, the provision in the mortgage for a sale to be "paid out and out in money," was rendered meaningless; for any sale payable at any time in money and nothing but money, would be within the meaning of these words, whether it was on time, ten years hence, or by instalments running for forty years. The expression must be taken and can be understood in no other sense, than as used in emphatic contrast with the provisions for the ground-rent sale. The sale agreed upon, payable in instalments and secured by mortgage, was not a ground-rent sale; nor was it a sale for money out and out, for the price or money was not to be paid. It follows neither alternative provided by the trust-deed. It was a sale to be secured by mortgage; but the security authorized to be

taken, are ground-rents. There is no provision for a mortgage, and the maxim "*expressio unius exclusio est alterius*" is peculiarly applicable in the construction of delegated powers. It was not intended that there should be securities, excepting in the event of a sale on ground-rent. The absence of any other provision for security, almost demonstrates, that the other alternative in the sale being adopted, the money was to be "paid out and out," and no credit given, but the cash to be paid down.

The company evidently intended by these different terms of sale, to provide for two contingencies which might arise, and which they supposed would be best met by those adopted; that is to say, it might become the interest of the company, for other reasons than the immediate receipt of the proceeds, to sell a part of their property—and hence they provided for a sale on ground-rent, the securities to be held by the trustees upon the same trusts as that of the property itself. But to meet a contingency in which the company might need money, they provided for a sale, the proceeds to be paid directly to themselves. This was, doubtless, to meet sudden emergencies, or perhaps to enable the company, in some advantageous manner, to deal with bond-holders, and for which cash might be required. Again, I do not see how a mortgage could be made to the company on a sale of property, the legal title to which is in the trustees. If it could be done in one instance, successive instances might follow, and eventually the company might become the holders of mortgages covering the whole property, and by transfers of them, destroy entirely the security of the bond-holders. These considerations point plainly enough, I think, to the true construction of the power of sale. It must either be for money "paid out and out" for the purposes of the company, or on ground-rent for the benefit of the trust. The sale was neither the one nor the other; and we agree with the position taken by the Philadelphia and Reading Railroad Company, that the trustees of the Lehigh Navigation Company cannot make a title to them clear of the mortgage, upon the terms of the sale agreed upon. Have they a right to a specific execution of the contract on any other terms?

Equity regards compensation in cases of defective execution, if the contract can be substantially executed, as equivalent to performance. It looks to the substance of the contract, and does not allow small matters to interfere with it, when compensation can be made: 2 *Story Eq. Juris.* § 777. But substantial defects will be regarded in equity. And even this may depend upon the party praying specific execution. Thus, a vendee may insist on the specific execution of a contract to convey so much as the vendor has title to, even if it be but for a portion of the whole. But I have not been able to find any case in which a different contract from that made by the parties has been enforced.

Lord Bolingbroke's Case before Lord THURLOW, 1 *Sch. & Lef.* 19 (n), is not of this last sort, but rather of the preceding kind. The vendee was obliged to convey to the extent he ought to do; but it was on the footing of the contract, and not outside of it, or upon any new contract.

Here, the plaintiffs ask that the defendants be required to convey on an annual ground-rent of $6000, the principal to be extinguishable in the same amounts and at the same times as the payments under the mortgage were to be made. There need perhaps be no further answer to this, than that it would be an attempt to enforce the execution of a contract never made by the parties. Equity will not make contracts for the purpose of arriving at supposed desirable ends. It acts only with contracts of parties, with a view to prevent them from being defeated by the rigid rules of law: it makes no new ones. It will not do, to say that the results will be precisely the same as the one attempted, but defeated for want of authority. If that contract did not bind, then there is no contract between the parties; and it is for them to make a new one, or a substitute for the old, and not the court.

All the results are not the same, however. The company intended (for so they have said) that when there was a sale for money, the proceeds should go directly to them. But if we were to decree a sale on ground-rent, the proceeds must be secured to the trustees for the general purpose of the trust; and hence a very different result, so far as the proceeds are concerned, would follow. They would not go to the company, but to the trustees, for the benefit of the trust. We must, therefore, refuse to decree as prayed for, and in doing so we leave the parties in *statu quo;* which is always an important consideration in refusing a decree for specific performance.

A subsidiary point, which may be of consequence in some future action by the defendants in this case, is raised, and may be noticed; that is, whether the surviving trustees in the mortgage were competent to convey.

In case of the death or resignation of any of them, it is provided in the trust-deed, that the company shall be *authorized* to appoint another person or persons to fill the vacancy; and thereupon to make such deeds and assurances as shall be necessary to vest in the new and remaining trustees all the trusts and powers conferred by the original trust-mortgage. From the terms used, it does not appear that the company were bound to fill such vacancy; but were authorized to do so, if they deemed it necessary or expedient. Nor is there any express requirement in the instrument, that the whole number of trustees shall join in making conveyances. Under these circumstances, I think, that without the Act of the 3d May 1855, the survivors could convey. The

Act of the 31st March 1812, excepted trust-estates in its enactments, against joint-tenancy. The right of survivorship, therefore, continued as to them as it had done at common law. It seems to me, that the grant to the trustees in this case was as joint tenants; and being so, the title at once vested in the survivors on the death of Mr. White, and they could convey. But be this as it may, the Act of 3d May 1855 comes in to relieve the subject of difficulty. It provides " that whensoever any trust, power, or authority shall be, in the manner provided for in the act to which this is a supplement (the act relating to assignees for the benefit of creditors and other trustees, *P. L.* 1836, p. 628), conferred on two or more persons by name, and one or more of them shall die, or renounce, or be legally discharged from fulfilling such trust, or exercising such power, the survivors or survivor, or remaining trustees, shall have and exercise all the title and authority which the whole might have done, unless the trust or power conferred shall require the whole number to act, in which case the vacancies shall be filled in the manner provided by the act to which this is a supplement."

Under these views of the case, we must affirm the decree at Nisi Prius, dismissing the bill in equity of the Philadelphia and Reading Railroad Company.

So, too, must we dismiss the cross-bill of the Lehigh Navigation Company, for the reasons assigned on the point raised by the Philadelphia and Reading Railroad Company, of want of authority to sell on a credit to be secured by bond and mortgage. The alternate prayer for a decree by the plaintiff in this case for specific performance, on payment of the money down by the defendants, is obnoxious to the objection made against the prayer of the plaintiffs in the preceding case, for a decree for a conveyance on ground-rent. It was not the contract that the money should be paid down, and we cannot interpolate a new contract.

> The decrees of the Court at Nisi Prius, dismissing the bill of The Philadelphia and Reading Railroad Company against The Lehigh Coal and Navigation Company, and in dismissing the bill of The Lehigh Coal and Navigation Company *vs.* The Philadelphia and Reading Railroad Company, are affirmed at the respective costs of the parties complainant.